PEOPLE v. COUNCIL

1. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—ADMISSIBILITY—AP-
PEAL AND ERROR—PRESERVING QUESTION.

An appellate court, as a general rule, will not consider allegations
of improper admission of identification testimony at trial
unless objections to that testimony were made in the trial
court.

2. CRIMINAL LAW—DEFENDANT TESTIFYING—IMPEACHMENT—PRIOR
CONVICTIONS—PERSISTENT QUESTIONING.

Prosecutor's persistently questioning a defendant about whether
he had been convicted of automobile theft, after defendant
had repeatedly denied it, and the prosecutor's asking the
defendant if he would still deny the theft if the defendant's
FBI record showed the conviction, thus implying not only that
defendant had an FBI record, but also that defendant was
lying about having committed the automobile theft, resulted
in reversible error even though defendant did not object to
the prosecutor's tactics because such tactics by a prosecutor
result in manifest injustice.

Appeal from Berrien, Chester J. Byrns, J. Submitted Division 3 October 7, 1971. (Docket No. 10678.) Decided October 27, 1971.

Pete Council was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Ronald J. Taylor,* Prosecuting Attorney, for the people.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Appeal and Error §§ 515 *et seq.;* 553; 624 *et seq.*

*William O. Lagoni,* for defendant on appeal.

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

PER CURIAM.  Defendant was convicted by a jury of the crime of robbery armed.[1]  He was subsequently sentenced to a term of 30 to 40 years imprisonment.  Defendant's motion for a new trial was denied and this appeal followed.

On January 1, 1970, a person entered a gas station in Berrien County, Michigan, and used the public telephone.  Gary Cecci, the station attendant, overheard that individual say to whomever he was calling that he had been in a fight the night before and had gone to Mercy Hospital for treatment on his nose and that he had been "busted open".  Shortly thereafter, the man pulled a gun, pointed it at Mr. Cecci, and robbed the station of approximately $150.

Immediately after the robbery, Mr. Cecci informed the police of the robbery and told them what he had heard the person say while using the telephone.  The complaining witness had about 1-1/2 to 2 minutes to observe the person who robbed the station and noticed that that person had three bandaids across his nose, three bandaids on his forehead, and some bandages on his chin.

Two or three days after the robbery, the complaining witness was shown about eight to ten photographs and apparently picked the defendant's photograph from them.  Sometime later, the complaining witness was shown recent pictures of the defendant in which he had scars on either side of his nose and about the same location as the bandaids had

---

[1] MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).

been on the person who did the robbery. The witness positively identified the defendant as the robber.

Mr. Cecci testified at trial that the robber didn't have a beard or mustache and had a part in his hair. The defendant, testifying in his own behalf, said that on January 1, 1970, he had a mustache and didn't have a part in his hair. Mr. George Washington, a barber, who had cut the defendant's hair between January 1, 1970, and January 5, 1970, testified that prior to January 5, 1970, the defendant didn't have a part in his hair and that he had a mustache.

Mrs. Teola Johnson, testifying on defendant's behalf, stated that on January 1, 1970, defendant's eyes were "swollen bad" and that his left eye was "practically swollen closed". She also related that the defendant didn't have a part in his hair on January 1, 1970, and did have a mustache.

The jury, apparently believing the complaining witness's testimony, found the defendant guilty. This appeal followed, raising two assignments of error.

On appeal, defendant contends that the pretrial identification of the defendant by means of photographs was so necessarily suggestive and conductive to misidentification that it tainted subsequent in-court identification.

In *Simmons* v. *United States* (1968), 390 US 377, 384 (88 S Ct 967, 971; 19 L Ed 2d 1247, 1253), the United States Supreme Court addressed itself to the instant issue:

"We hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno* [1967], 388 US 293, 301, 302 (87 S Ct 1967, 1972–1973; 18 L Ed 2d 1199, 1206), and with decisions of other courts on the question of identification by photograph."

In the present case, the pretrial photographic identification procedure, scrutinized in light of the totality of the surrounding circumstances, does not give rise to substantial likelihood of irreparable misidentification. Because the procedure was not so unduly prejudicial as to wholly taint the conviction of the defendant, this Court finds no merit in this contention by defendant.

Further, as a general rule, this Court will not consider allegations of improper admission of identification testimony at trial unless objections were made in the court below. *People* v. *Schram* (1970), 23 Mich App 91.

Since the defendant in this case did not make a motion for an evidentiary hearing outside the presence of the jury to determine elements of his claim that the pretrial photographic identification rendered the in-court identification by the complainant inadmissible, it is apparent that his claim was not properly preserved for review.

The second issue raised by defendant is whether the evidence presented in the court below was sufficient to support a jury verdict of guilty beyond a reasonable doubt.

This contention is without merit. The complainant positively identified the defendant as the man who robbed him and if such identification was not tainted by pretrial photographic identification, it was plainly sufficient to support a jury verdict beyond a reasonable doubt. Accordingly, this Court finds contrary to defendant's contention.

After an exhaustive examination of the record, however, a third issue not raised by defendant becomes obviously apparent. Despite lack of timely objection, error which reflects a clear injustice may be examined. *People* v. *Hicks* (1966), 2 Mich App 461.

In the instant case, the prosecutor continually asked the defendant whether he had been convicted of automobile theft in April 1962. The defendant repeatedly denied it, but the prosecutor continued to question him upon that point. Furthermore, when the prosecutor asked the defendant if he would still deny it if his FBI record showed it, he implied not only that the defendant had an FBI record, but also that he was lying about having committed the automobile theft. When a prosecutor repeatedly uses such tactics, tending to destroy the credibility of the defendant in the minds of the jurors, reversible error is committed. See *People* v. *Jones* (1971), 32 Mich App 309; and *People* v. *Di Paolo* (1962), 266 Mich 394, for situations parallel to the instant case.

Although defendant did not raise timely objection, to avoid manifest injustice this Court determines that defendant's conviction should be reversed and remanded for a new trial.